UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LITA FILIPPO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:05 CV 64 |
| | ) |
| LEE PUBLICATIONS, INC., | ) |
| a subsidiary of Lee Enterprises, | ) |
| d/b/a THE TIMES, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

**I. BACKGROUND**

Plaintiff Lita Filippo was arrested in January 2003 for operating a vehicle while intoxicated (OWI). Plaintiff was eventually acquitted after a jury trial, but between her arrest and trial, she was the subject of several articles, editorials, cartoons and letters printed in The Times, a daily newspaper published in Northwest Indiana. Much of the news coverage stemmed from the fact that, at the time of her arrest, plaintiff served as a director of the Partnership for a Drug Free Lake County, a governmental organization aimed at reducing drug and alcohol use. Plaintiff sued for defamation, (DE # 1) and defendant Lee Publications, Inc., the owner of The Times, removed the case to federal court. (DE # 2.)

This court has resolved the case's merits by granting summary judgment in favor of defendant. *See Filippo v. Lee Publ'n Inc.*, 485 F. Supp. 2d 969 (N.D. Ind. 2007); (DE # 65.)  However, additional issues remain, including Magistrate Judge Rodovich's report

and recommendation, advising this court to impose sanctions upon plaintiff and her counsel, and to certify the matter to the Disciplinary Committee of the Indiana Supreme Court. (DE # 40.) Plaintiff has objected to the report and recommendation, and defendant has responded to the objection. (DE # 57, 60.) For the following reasons, the court OVERRULES plaintiff's objection and ADOPTS the report and recommendation's call for sanctions.

**II. FACTS**

The suggested sanctions stem from the discovery process. Because plaintiff alleged that defendant had harmed her reputation by publishing pieces about her OWI arrest, defendant sought information from plaintiff regarding her criminal background. Specifically, defendant wanted to know whether plaintiff had previous encounters with the police, including arrests, charges or convictions. If so, this could have affected her public reputation, and thus reduced any possible damages. Defendant's Interrogatory 20 asked directly about this subject, but plaintiff gave an incomplete answer:

> Other than your arrest in January 2003 for Driving Under the Influence of Alcohol, have you ever been indicted, accused of a crime, and/or been arrested on any charge?
>
> A. None for the past 10 year [sic].

(DE # 22-2 at 15.)

Defendant also requested "all documents related to any criminal charges, criminal convictions, or criminal investigations concerning you, the Insurance Business, [plaintiff owns an insurance business] and/or any Other Business Interests." (DE # 22-2

at 27.) Plaintiff responded that this was "overbroad, unduly burdensome, irrelevant and immaterial," invoked attorney-client privilege, and referred defendant to "publicly available documentation concerning the prosecution, defense, trial and acquittal of the 2003 misdemeanor charge." (*Id.*)

Some time after receiving these responses, defendant acquired a copy of plaintiff's Verified Petition for Issuance of Hardship License – a pleading plaintiff filed in Lake County Circuit Court after her 2003 OWI arrest in effort to regain her driving privileges. The petition stated that plaintiff "had never been convicted of a similar offense or . . . had a suspended license for a similar reason." (DE #22-2 at 29.) At plaintiff's initial deposition, held in April 2006, defendant followed up on this assertion, asking:

> Q. Okay. Was this the first time you had ever had your license suspended?
>
> A. Yes, or that I can remember, yes . . . .
>
> Q. Have you ever been convicted of a crime?
>
> A. Convicted? No.
>
> Q. Have you, you have already – have you ever been accused of a crime?
>
> A. No.
>
> Q. Well, the OWI in 2003 was a crime.
>
> A. Oh. Well, it wasn't convicted of a crime and that's what you asked me.
>
> Q. No, I asked accused . . . .

> A. Oh, I'm sorry, I thought you said convicted. Accused, yeah.
>
> Q. When were you accused of a crime?
>
> A. January 25th, 2003 [the date of plaintiff's 2003 OWI arrest].
>
> Q. And were you ever accused of a crime previously to that?
>
> A. No.
>
> Q. Were you ever accused of a crime subsequently to that?
>
> A. No.
>
> Q. And you've not been convicted previously or subsequently to this OW – the 2003 OWI incident?
>
> A. Convicted? No.

(DE # 22-2 at 32-33.)

However, at the time of this deposition, defendant had acquired another Petition for Hardship License, this one filed by plaintiff in 1990. (DE # 22-2 at 36-37.) In the 1990 petition, plaintiff related that on November 3, 1989, she had "received an Operating While Intoxicated Charge" and that, as a result, the Indiana Bureau of Motor Vehicles had suspended her driving privileges. (*Id.* at 36.) Indiana Bureau of Motor Vehicle records unearthed by defendant revealed that during the 1989 OWI incident, plaintiff's blood alcohol test showed she was over the legal limit (then .12%), and noted a "date of arrest" of November 3, 1989. (*Id.* at 38.)

When asked indirectly about this prior charge and suspension of her license, plaintiff mentioned an altercation at a gas station with a "Mr. Schuckers." (DE # 22-2 at 33-35.) She stated that "they didn't charge me" and that "[i]t was 17 years ago and I

4

don't remember everything, I'm sorry," and also specifically denied being charged with OWI as part of that incident. (*Id.* at 35.) The 1990 petition bore plaintiff's signature and the signature of her counsel Mark Van Der Molen, who is also plaintiff's counsel in this action. (*Id.* at 36-37.)

After this first deposition, defendant discovered a "stipulated plea agreement" submitted to the Gary, Indiana, City Court. (DE # 22-2 at 40-41.) The plea agreement resolved plaintiff's 1989 OWI charge, and addressed *additional* charges against her. (*Id.*) These additional charges stemmed from an incident at a bar in Gary, where plaintiff was charged with Disorderly Conduct, Criminal Trespass, Public Intoxication, and Intimidation. (*Id.*) The arresting officer indicated that plaintiff had been intoxicated, was bothering customers, refused to leave, and threatened the police. (*Id.* at 42.) In the plea agreement, plaintiff agreed to pay a $500 fine and serve 180 days in jail, although the State agreed to suspend the fine and the jail term if plaintiff successfully completed six months' probation. (*Id.* at 40.) The plea agreement contained the signatures of both plaintiff and her current counsel. (*Id.* at 41.)

At plaintiff's second deposition, defendant inquired about these additional charges. When asked about the plea agreement, plaintiff responded "I don't even know what you're talking about." (DE # 22-2 at 47.) When shown the plea agreement, which bore her signature, (DE # 22-2 at 41), plaintiff claimed "I've never seen this." (*Id.* at 48.) Defendant then recounted plaintiff's denials of any past criminal history and repeatedly asked whether plaintiff had told the truth. (*Id.* at 49.) Plaintiff's counsel objected, and

5

instructed plaintiff not to answer. (*Id.* at 49-50.) Defendant then called off the deposition, and subsequently moved to compel and for sanctions. (*Id.* at 51; DE # 22, 26.)

Defendant's motion for sanctions argued that plaintiff's criminal records were relevant to the proceedings, and that plaintiff's discovery responses either "concealed relevant information concerning her criminal past" or were "entirely false." (DE # 22 at 9.) Defendant further argued that plaintiff had a duty to correct her previous statements, including her incomplete interrogatory answer, her failure to provide any documents pertaining to her criminal record, and the false statements she gave in her deposition testimony. (*Id.*) However, defendant noted, plaintiff failed to do so. (*Id.*)

In her response to the motion for sanctions, plaintiff alleged that her counsel "had no records nor memory of" plaintiff's OWI charge from November 3, 1989, and that her counsel's previous law firm would have those records. (DE # 27 at 1.) She also noted that the court records were "unauthenticated," (*id.* at 2-3) and complained that defendant should have given her copies of the records documenting her criminal record as soon as they were discovered. (*Id.* at 1-2.) Plaintiff also argued that, by asking about her criminal record at the second deposition, defendant had breached the parties' agreement about the subject of that deposition. (*Id.* at 2-3.) Plaintiff claimed that any implication that plaintiff or her counsel were "evading" discovery was "scurrilous and without basis in fact." (*Id.* at 3.) Plaintiff also asserted that any such records were irrelevant, as they would have preceded her 2003 arrest by more than a decade. (*Id.* at

6

4.) Notably, plaintiff failed to claim that the information in these documents was untrue, or that she had ever searched for documents relating to her criminal record.

Magistrate Judge Rodovich then issued his report and recommendation calling for sanctions. In the report and recommendation, Magistrate Judge Rodovich found that plaintiff's "responses in discovery, and in briefing before this court, are evasive and incomplete to the point of failure." (DE # 40 at 7.) The court rejected plaintiff's suggestion that neither she nor her counsel had any recollection of her earlier arrests, guilty plea, and receipt of probation. (*Id.*). The court also determined that, even if plaintiff and her counsel didn't remember these earlier arrests and proceedings, they still had a duty "that went beyond merely examining their own memories for responsive information." (*Id.* at 8.)

The report and recommendation rejected plaintiff's arguments that the court records were "unauthenticated," that the subject of her prior criminal record was irrelevant, and that defendant should have provided them copies of the records once it found them. (DE # 40 at 8-11.) It concluded that plaintiff's "pattern of responses was not substantially justified" and that "withholding such information in a claim alleging defamation is harmful, as described" by FEDERAL RULE OF CIVIL PROCEDURE 37. (*Id.* at 11.) Magistrate Judge Rodovich then recommended that this court impose sanctions against plaintiff pursuant to Rule 37(a)(4)(A), and sanctions against plaintiff's counsel pursuant to Rule 37(c)(1), and certify this matter to the Indiana bar for possible inquiry. (*Id.* at 12.)

Plaintiff objected to the report and recommendation, (DE # 57) and defendant responded. (DE # 60.) This court must now decide whether to adopt the report and recommendation.

### III. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court has discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; FED. R. CIV. P. 72(b). Plaintiff appears to object to all of the conclusions made by the report and recommendation, (DE # 57) so the court will review Magistrate Judge Rodovich's report de novo. *See* 28 U.S.C. § 636(b)(1)(C).

As noted in Magistrate Judge Rodovich's report and recommendation, discovery sanctions are available via FEDERAL RULE OF CIVIL PROCEDURE 37. Such sanctions may be levied when a party refuses to answer an interrogatory or a deponent refuses to answer a question, and the opposing party successfully moves to compel. *See* FED. R. CIV. P. 37(a)(2)(B), 37(a)(4)(A). In fact, there is a rebuttable presumption that the costs of the party who files a successful motion to compel will be paid by the losing party. FED. R. CIV. P. 37(a)(4)(A) (court "shall" grant costs when moving party wins motion to compel); *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 753, 771 (S.D. Ind. 2003) (Rule 37(a)(4) "establishes a presumption in favor of a fee award for the party

8

who prevails on the motion" to compel); 7 James W. Moore et al., *Moore's Federal Practice* § 37.23[1] (3d ed. 2006) (noting language of Rule 37). Sanctions are not appropriate when the opposing party's actions were "substantially justified" or the moving party failed to make a "good faith effort" to obtain the information without court action. FED. R. CIV. P. 37(a)(4)(A).

Furthermore, a party that fails to amend a prior response to discovery after learning that the response was incorrect or incomplete may also receive sanctions, including attorney's fees and other expenses. FED. R. CIV. P. 37 (c)(1); FED. R. CIV. P. 26(e)(2). The district court has discretion over whether to impose such sanctions. *See Castillo v. St. Paul Fire & Marine Ins. Co.*, 938 F.2d 776, 779 (7th Cir. 1991).

**IV. ANALYSIS**

One of two things has happened in this case – either plaintiff and her counsel have lied and continue to lie to the court about their memories of plaintiff's criminal record, or they have told the truth, and instead were disingenuous and lazy in the discovery process. Either possibility merits sanction.

*A. Plaintiff's Behavior During Discovery Merits Sanctions.*

Magistrate Judge Rodovich appeared to believe that plaintiff was actively lying in her depositions. This conclusion is quite reasonable – plaintiff's claims that she has no memory of any criminal proceedings beyond the past ten years are near absurd. Records found by defendant demonstrate that plaintiff was charged with an additional OWI in 1989 and had her license suspended. (DE # 22-2 at 36-38.) Also, a police report

9

and a plea agreement show that plaintiff was arrested at a bar in Gary and charged with four misdemeanors. (*Id.* at 40-42.) She then pled guilty to criminal trespass and apparently served six months probation. (*Id.* at 40-41.) These facts are demonstrated through documents that contain plaintiff's signature and the signature of her current counsel. (*Id.* at 36-41.) And these were no youthful indiscretions that might be easily forgotten as some teenage mistake. Records reveal that plaintiff was thirty years old at the time of these arrests and charges. (*Id.* at 36, 38.) Barring some medical evidence of incapacity or faulty memory (which plaintiff does not present), her claims that she "doesn't remember" these incidents, particularly pleading guilty to a crime and receiving six months probation, are borderline ridiculous.

Furthermore, plaintiff plainly and repeatedly denied having a criminal record, or even being charged or arrested, besides her 2003 OWI arrest. (DE # 22-2 at 32-35.) She did not couch her answers in "as far as I can remember." Rather, she just flatly denied having ever been arrested, charged or convicted of a crime.[1] All these claims are demonstrably false. Then, when confronted with documents revealing her false statements, plaintiff claimed ignorance, stating "I don't even know what you're talking about." (*Id.* at 47.)

This court does not believe plaintiff's claims of faulty memory. At the age of 30, she was arrested and charged with five misdemeanors.  (DE # 22-2 at 36-42.) Her

---

[1] Plaintiff did qualify her claim that she had never had her license suspended before her 2003 OWI arrest with the phrase "that I can remember." (DE # 22-2 at 32.)

10

driver's license was suspended. (*Id.* at 36-37.) While both incidents involved the use of alcohol, plaintiff later, hopefully in a sober state, signed a petition to regain her driving privileges and a plea agreement, in which she pled guilty to criminal trespass and agreed to serve six months probation. (*Id.* at 36-37, 40-41.) Unless a person is a habitual criminal, and in and out of court so often that proceedings start to blur together, one does not forget something like this. To this court, plaintiff's untruths during her depositions, combined with her evasive responses to written discovery, indicate that she was hoping to hide her criminal record in effort to support her claim that defendant injured her reputation by reporting on her 2003 OWI arrest.

As explained in RULE 37(a)(3), for the purposes of subdivision (a), an "evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond." FED. R. CIV. PRO. 37(a)(3). The court holds that plaintiff made evasive and incomplete disclosures, particularly in written discovery, gave completely false answers in deposition, and then failed to answer questions and claimed ignorance when her lies were exposed. These actions merit sanctions under RULE 37(a).

*B. Ther Actions of Plaintiff's Counsel Merit Sanctions.*

Plaintiff's counsel's claim that he did not remember plaintiff's previous arrests, criminal charges, conviction and suspension of her driver's license are slightly more believable than plaintiff's. An attorney may represent many clients over the years, and minor pleadings like a petition to reinstate a driver's license and a guilty plea in a

11

misdemeanor case very well may not stand out. However, even assuming counsel did not remember these earlier proceedings, his behavior still warrants sanctions.

First, counsel answered defendant's interrogatory on plaintiff's criminal history with the response: "None for the past ten year [sic]." (DE # 22-2 at 15.) While this statement appears to be true, it was blatantly incomplete. One would have, at the least, expected the answer to plead ignorance beyond ten years, or object to the question as overbroad. Counsel did neither. Counsel claims that this response "was based on a standard inquiry of the extent of the client's memory in response to that question" and "was not intended to conceal." (DE # 57 at 2.) While the intent of the response is debatable, the response itself was incomplete and lazy. Counsel argues that the response "affirmatively properly alerted the Defendant of the possibility of the existence of charges or convictions that would predate that time period." (DE # 57 at 2.) So, according to counsel, he was not trying to hide the information, he just didn't know if there was any, and he didn't want to bother to find out. Thus, he made this woeful response in effort to avoid doing any research. And he certainly did none – his own pleadings indicate that he did not check court or police records or even his own files before answering this interrogatory. (*Id.* at 2-3.) Instead, he asked his client, accepted her suspicious claims of memory loss, and did nothing further.

Then, when confronted with evidence that his client either lied or had a faulty memory, counsel did almost nothing to follow up. At the first deposition, counsel was shown a copy of the Petition for Hardship License he filed in 1990. (DE # 22 at 2.) This

12

document bore his signature, and reported that his client had been charged with another OWI in 1989. (DE # 22-2 at 36-37.) Thus, he was put on notice that his client had lied in her deposition, or at the very least given incomplete answers, and that his answers to defendant's document request and interrogatory were wrong and misleading. His sole response was to inquire with the Lake County Circuit Court about any records relating to plaintiff's 1989 OWI, even though defendant had already told him there were none there. (DE # 27 at 1, ¶3.) Besides this pointless inquiry, counsel apparently did nothing else to try to find out whether his client had made false statements during her deposition, or whether his discovery responses were untrue. Counsel could have examined the files of his old law firm, or requested police records, or inquired with the Bureau of Motor Vehicles. But he chose to ignore these options, despite being presented with a document bearing his own signature that indicated his client had lied under oath and that his discovery responses were wrong. Instead, he did almost no follow up investigation.

Counsel should have done so, because RULE 26(e) imposes a "duty to supplement or correct" earlier responses "if the party learns that in some material respect the information disclosed is incomplete or incorrect . . . ." FED. R. CIV. P. 26(e)(1). In the court's estimation, being presented with the 1990 petition, which demonstrated that plaintiff *had* received a previous OWI, in contradiction of her testimony, created a duty for counsel "to supplement and correct" plaintiff's previous testimony and her incomplete discovery answers. Counsel's laughable attempts to investigate his client's

13

criminal record and his failure to supplement or correct her responses violated this duty. As Magistrate Judge Rodovich noted, the rules of discovery "required much more from" counsel. (DE # 40 at 10.) His disingenuous and apathetic behavior also merits sanctions.

Counsel does make an interesting argument in his defense. Specifically, he claims that his duty to supplement or correct his discovery responses ended when defendant discovered that plaintiff had a criminal record. (DE # 57 at 5-6.) According to this theory, defendant discovered plaintiff's criminal history before her second deposition, and thus plaintiff's duty to correct her incomplete and incorrect responses ended at that time, and any behavior she and her counsel engaged in after that period is not sanctionable. (*Id.* (citing FED. R. CIV. P. 26(e)(1)-(2).) While this is a creative argument, even after discovering the documents showing plaintiff's prior criminal record, defendant still did not "know" definitively whether she had one. Defendant merely had some evidence that plaintiff had a criminal record, suspected that plaintiff had given false answers in her first deposition, and thus wished to further question plaintiff about this. Plaintiff prevented that from happening when her counsel refused to allow her to answer. (DE # 22-2 at 47-51.) This court holds that plaintiff's duty to correct and amend her discovery responses did not end when defendant unearthed documents revealing her criminal record.

This court holds that plaintiff's counsel, Mark Van Der Molen, merits sanctions under RULE 37(c)(1), for failing "to amend a prior response to discovery" as required by

14

the FEDERAL RULES OF CIVIL PROCEDURE. *See* FED. R. CIV. P. 37(c)(1). Counsel's initial answer to defendant's interrogatory and document requests were inadequate and evasive. Then, when confronted with information demonstrating that his client had lied during her deposition, he took almost no action, and did not try to supplement or correct her previous answers, or to supplement his discovery answer or his woeful interrogatory answer with further information.

*C. Defendant Made a Good Faith Effort to Obtain Information on Plaintiff's Criminal Record.*

Plaintiff and her counsel could avoid sanctions if they demonstrate "substantial justification" for their actions. *See* FED. R. CIV. P. 37(a)(4)(A); FED. R. CIV. P. 37(c)(1). But barring medical evidence of memory loss, there is no justification for plaintiff's actions. Plaintiff's counsel also makes no attempt to justify his actions, besides an unpersuasive attempt to explain his interrogatory response.

Plaintiff does, however, argue that defendant did not make a good faith effort to "confer under RULE 37 prior to seeking court intervention." (DE # 57 at 4); *see* FED. R. CIV. P. 37(a)(4)(A) (sanctions unavailable when moving party failed to make a good faith effort to obtain information without filing motion to compel). According to plaintiff, defendant should have conferred with her regarding the objections her counsel made in the second deposition, and should have handed over the documents it uncovered about plaintiff's criminal record as soon as they came into its possession. This argument misstates the requirements of RULE 37. The rule states that this Court can avoid imposing sanctions if it finds "the motion [for sanctions] was filed without

15

[defendant] first making a good faith effort to obtain the disclosure or discovery without court action . . . ." Fed. R. Civ. P. 37(a)(4)(A). There is no blanket requirement "to confer."

The record reveals that defendant did make a good faith effort to obtain the disclosure of plaintiff's criminal record. He submitted an interrogatory on the subject, and requested documents relating to any possible criminal charges, arrests, or convictions. (DE # 22-2 at 15, 27.) But plaintiff provided defendant nothing, except for her evasive answer to the interrogatory and her disingenuous response to the document request. Then, at the first deposition, defendant presented a document to plaintiff that indicated she had a criminal record, thus giving her the opportunity to explain her history. Plaintiff denied being charged, and claimed to not remember anything. (DE # 22-2 at 33-35.) Defendant went back, did more research, and unearthed additional documents, then attempted to ask plaintiff about them at her second deposition. (*Id.* at 40-42, 46-51.) Plaintiff's counsel prevented her from answering. (*Id.* at 46-51.) In sum, defendant made numerous earnest attempts to get the pertinent information from plaintiff, and each time was foiled. This court does not find that defendant failed to make a good faith effort to obtain disclosures from plaintiff about her criminal record.

*D. Amount of Sanctions.*

Defendant has submitted an affidavit detailing the costs it incurred while attempting to uncover information about plaintiff's criminal record. There is a presumption in favor of granting "expense shifting sanctions" against the party who

16

loses a motion to compel, *see* 7 James W. Moore et al., *Moore's Federal Practice* § 37.23[1] (3d ed. 2006), although the granting of such sanctions is discretionary. Fed. R. Civ. P. 37(a)(4)(A) & (C) (court "shall" grant costs when moving party wins a motion to compel; "may" grant costs when granted in part and denied in part); *Castillo*, 938 F.2d 776, 779.

 Here, after plaintiff's second deposition – where her counsel prevented defendant from asking questions about her criminal record – defendant filed a motion to compel the deposition of plaintiff, (DE # 22) which Magistrate Judge Rodovich granted in part and denied in part. (DE # 40 at 11 (ordering deposition but denying request to conduct deposition in court and for hearing).) After the court issued its decision on the motion to compel, defendant filed a detailed affidavit documenting the costs it incurred while trying to uncover information about plaintiff's criminal background. (DE # 41.) These costs total $16,550.51 – the cost of the motion to compel and for sanctions comprised $9,665.45, and defendant's efforts to uncover documents and information relating to plaintiff's criminal record cost $6,885.06. (*Id.* at 3.)

 Plaintiff does not argue that this amount is excessive, but rather that most of it was not "incurred in seeking the Motion to Compel." (DE # 57 at 6.) Plaintiff notes that defendant did not seek a motion to compel until after plaintiff's second deposition, and that many of the costs listed by defendant predate this deposition. (*Id.* at 6-7.) Plaintiff thus argues that these costs could not have been incurred "in seeking" the motion to compel.

The court has evaluated the precedent plaintiff cites, *Stookey v. Teller Training Distribution, Inc.*, 9 F.3d 631 (7th Cir. 1993), and that decision does not contain the word "seeking." Rather, it summarizes RULE 37(a)(4) as allowing "for an award of the expenses incurred in *obtaining* an order to compel, including attorney's fees." *Stookey*, 9 F.3d at 637 (emphasis added). RULE 37(a)(4)(A) itself does refer to "expenses incurred in *making* the motion . . . ." FED. R. CIV. P. 37(a)(4)(A) (emphasis added). However, RULE 37(a)(4)(C), which applies when a motion to compel is granted in part and denied in part, as in this case, allows a court to "apportion the reasonable expenses incurred *in relation to the motion* . . . ." FED. R. CIV. P. 37(a)(4)(C) (emphasis added). Thus, based on the language in subsection (C), and the interpretation of the rule provided in *Stookey*, it appears that expenses that relate to a motion to compel or were incurred in obtaining such a motion can be billed to the losing party as sanctions. In this case, defendant's efforts to uncover the truth about plaintiff's criminal record formed the basis for the motion to compel, as these efforts revealed plaintiff's fabrications, and were necessitated by her dishonesty and inadequate discovery responses. Costs that defendant incurred during this research, therefore, certainly relate to the motion. The exact timing of the expenses does not matter, as long as defendant can show they directly related to the substance of the motion.

In any event, sanctioning plaintiff and her counsel by ordering them to pay such expenses is definitely available under RULE 37(c)(1). This rule allows for the imposition of sanctions, including attorney's fees, caused by the failure "to disclose information" or

"amend a prior response to discovery . . . ." FED. R. CIV. P. 37(c)(1). As noted above, plaintiff's counsel failed to properly disclose information, and failed to amend his incomplete response to discovery, even after learning they were inaccurate. Therefore, defendant's costs incurred in attempting to answer the questions surrounding plaintiff's criminal record for itself are available to be levied as sanctions.

     This court will apportion the sanctions as follows. Under RULE 37(a)(4)(A), it sanctions plaintiff, Lita Filippo, and orders her to pay defendant's costs incurred in filing the motion to compel and for sanctions. This totals $9,665.45. Plaintiff repeatedly lied under oath and when caught attempted to excuse her lies by claiming forgetfulness. It is appropriate that she pay the bulk of the sanctions. Plaintiff's counsel, attorney Mark Van Der Molen, is sanctioned under RULE 37(c)(1) and ordered to pay the costs defendant incurred while uncovering the information regarding plaintiff's criminal record. As far as this court can tell, attorney Van Der Molen made almost no attempt to discover whether plaintiff had a prior criminal record. It is appropriate that he pay the costs defendant incurred while uncovering this information. This sanction totals $6,885.06.

## V. CONCLUSION

For the foregoing reasons, plaintiff's objections to Magistrate Judge Rodovich's report and recommendation are **OVERRULED**. The court **ADOPTS** the report and recommendation. Plaintiff, Lita Filippo, is **ORDERED** to pay $9,665.45 to defendant Lee Publications, Inc. Plaintiff's counsel, Mark Van Der Molen, is **ORDERED** to pay $6,885.06 to defendant.

**SO ORDERED.**

**ENTER:** September 12, 2007

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT